**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
LAUNA ADOLPH (SBN 227743)
ladolph@maternlawgroup.com
KAYVON SABOURIAN (SBN 310863)
ksabourian@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone:  (310) 531-1900
Facsimile:  (310) 531-1901

Attorneys for Plaintiff
JASON HOLLOWAY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HOLLOWAY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>3M COMPANY, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 5:19-cv-00708-JAK (KKx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Declarations of Launa Adolph, Mary Butler, Maria Roberts, and Jason Holloway; [Proposed] Order Granting Final Approval of Class Action Settlement; and [Proposed] Judgment]<br><br>Date:        June 21, 2021<br>Time:        9:00 a.m.<br>Courtroom:   10B |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 21, 2021, at 9:00 a.m., in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building and Courthouse, located 255 East Temple Street, Los Angeles, California 90012, plaintiff Jason Holloway ("Plaintiff") will and hereby does move this Court for order granting final approval of class action settlement.

Pursuant to Federal Rule of Civil Procedure, Rule 23, Plaintiff respectfully moves for entry of an order providing for the following:

1. Granting final approval of the terms of the proposed class action settlement described in the Stipulation of Class Action Settlement and Release Agreement ("Stipulation"), as fair, reasonable, and adequate to all Class Members ;

2. Finding that the Notice of Class Action Settlement ("Class Notice") and Information Sheet (collectively, the "Notice Packet") distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best notice practicable under the circumstances;

3. Finally certifying the class for settlement purposes only;

4. Overruling the objection to the Settlement;

5. Directing that compensation to all Participating Class Members be affected pursuant to the terms of the Stipulation;

6. Approving the payment to the California Labor Workforce Development Agency in the amount of Thirty-Seven Thousand Five Hundred Dollars ($37,500.00);

7. Approving the Settlement Administration Costs in the amount of Fourteen Thousand Dollars ($14,000.00); and

8. Entering final judgment in the action.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Launa Adolph, Mary Butler, Maria Roberts, and Jason Holloway, and all exhibits thereto, including the Stipulation, all documents and

1  records on file in this matter, and such additional argument, authorities, evidence and

2  other matters as may be presented by the parties hereafter.

3        This motion is made following the conferences of counsel pursuant to Local

4  Rule 7-3 on May 17, 2021.  Defendant does not oppose this motion.

5

6  DATED: May 24, 2021          **MATERN LAW GROUP, PC**

7

8                    By:    */s/ Launa Adolph*
                           MATTHEW J. MATERN
9                           LAUNA ADOPLH
                           KAYVON SABOURIAN
10
                           Attorneys for Plaintiff Jason Holloway
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ..............................................................................1

II.  THE SETTLEMENT..........................................................................1

  A.  The Class ....................................................................................1

  B.  Settlement Terms......................................................................... 2

  C.  Release ........................................................................................3

III. CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND THE REQUIREMENTS OF DUE PROCESS.......................4

IV.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL..................5

  A.  Relevant Criteria Support Final Approval of the Settlement ......................... 6

      1.  Plaintiff and Class Counsel Have Adequately Represented the Class.........................................................................................7

      2.  The Settlement Is The Product Of Informed, Arm's Length Negotiations.......................................................................... 8

      3. The Settlement Provides Adequate Relief for the Class ................. 9

      4. The Settlement Does Not Provide Preferential Treatment To Plaintiff Or Any Segment Of The Class......................................12

      5. Class Members' Reaction to the Settlement ...................................12

  B.  The Proposed PAGA Allocation Is Fair And Reasonable ..............................13

V.   THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY.......................................................................14

  A. The Proposed Class Is Sufficiently Numerous ................................................15

  B. Common Questions Of Law And Fact Predominate.......................................15

  C. Plaintiffs' Claims Are Typical Of Those Of The Class Members...................17

  D. Plaintiff and His Counsel Will Adequately Represent the Class Members.....17

  E. A Class Action Is A Superior Method For Adjudicating this Action .............17

VI.  CONCLUSION.............................................................................................18

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

i

MOTION FOR FINAL APPROVAL

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcala v. Meyer Logistics, Inc.,*
2019 WL 4452961 (C.D. Cal. June 17, 2019) ......................................14

*Amchem Prods.,Inc. v. Windsor,*
521 U.S. 591 (1997).................................................................16, 18

*Arrendondo v. Delano Farms Co.,*
2011 WL 1486612 (E.D. Cal. Apr. 19, 2011)................................16

*Burns v. Elrod,*
757 F.2d 151 (7th Cir. 1985) .................................................. 4

*Deaver v. Compass Bank,*
2015 WL 4999953 (N.D. Cal. Aug. 21, 2015)............................... 8

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011).................................................17

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).........................................6, 17

*Hanon v. Dataprods. Corp.,*
976 F.2d 497 (9th Cir. 1992)................................................17

*Hendricks v. StarKist Co.,*
2015 WL 4498083 (N.D. Cal. July 23, 2015)...........................12

*Hopson v. Hanesbrands, Inc.,*
2008 WL 3385452 (S.D. Cal. Apr. 13, 2009).........................14

*In re Badger Mountain Irr. Dist. Sec. Litig.,*
143 F.R.D. 693 (W.D. Wash. 1992)......................................15

*In re Hyundai & Kia Fuel Econ. Litig.,*
926 F.3d 539 (9th Cir. 2019)...........................................16, 18

*In re M.L. Stern Overtime Litig.,*
2009 WL 995864 (S.D. Cal. Apr. 13, 2009)............................14

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000)............................................ 7

*In re Portal Software Secs. Litig.,*
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)..........................10

*In re Synocor ERISA Litigation,*
516 F.3d 1095 (9th Cir. 2008)........................................... 6

*Lerwill v. Inflight Motion Pictures Inc.,*
582 F.2d 507 (9th Cir. 1978)............................................18

MOTION FOR FINAL APPROVAL

*Levya v. Medline Indus, Inc.,*
  716 F.3d 510 (9th Cir. 2013) ....................................................................14, 18

*Molski v. Gleich,*
  318 F.3d 937 (9th Cir. 2003) ....................................................................12

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................12

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ...............................................................6, 10

*Rannis v. Recchia,*
  380 F. App'x 646 (9th Cir. 2010) ..........................................................15

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) .................................................................6, 8

*Satchell v. Fed. Express Corp.,*
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................... 8

*Smith v. Cardinal Logistics Mgmt. Corp.,*
  2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .......................................15

*Staton v. Boeing Co.,*
  327 F. 938 (9th Cir. 2003) ..................................................................... 5

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ...............................................................6, 12

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) .................................................................17

*Vasquez v. Coast Valley Roofing, Inc.,*
  266 F.R.D. 482 (C.D. Cal. 2010) ........................................................... 9

*Visceral v. Mistral Grp., Inc.,*
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ......................................14

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ...........................................................................15

*Young v. Polo Retail, LLC,*
2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .............................................10

*Zamora Jordan v. Nationstar Mortg., LLC,*
  No. 2:14-CV-0175-TOR, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ...........11

**State Cases**

*Bayshore Transit Management, Inc.,*
  203 Cal. App. 4th 1112 (2012) ..............................................................13

*Iskanian v. CLS Transp. Los Angeles, LLC,*
  59 Cal. 4th 348 (2014) ...........................................................................14

iii

MOTION FOR FINAL APPROVAL

## Federal Statutes

28 U.S.C. § 1715..................................................................... 5

## State Statue

California Labor Code §1194   …………………………………………11

## Federal Rules

Federal Rule of Civil Procedure 23(a).............................................15,17

Federal Rule of Civil Procedure 23(b)(3)....................................15, 16, 17

Federal Rule of Civil Procedure 23(c)................................................. 4

Federal Rule of Civil Procedure 23(e).......................................4, 5, 6, 9


## State Rule

California Code of Civil Procedure §1021.5 ……………………   ………………11

## I.    INTRODUCTION

On March 9, 2021, this Court granted preliminary approval of the proposed class action settlement between Plaintiff Jason Holloway ("Plaintiff") and defendant 3M Company ("Defendant").  (Dkt. 136).  Plaintiff now seeks final approval of the Stipulation of Class Action Settlement and Release Agreement ("Stipulation").

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $1,550,000.00.   The proposed Settlement is fair, reasonable, and adequate, as it provides substantial benefits to the Class Members when balanced with the strength of Plaintiff's case and the risks and expense of further litigation.  In addition, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  To date, there is only one objection—which does not challenge the fairness, reasonableness, or adequacy of the Settlement—and 12 requests for exclusion, representing just 0.8% of the Class Members.  Additionally, the Settlement was reached through mediated arms-length negotiations, sufficient investigation and discovery allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class Members.

Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Final Approval of Class Action Settlement.[1]

## II.    THE SETTLEMENT

### A.    <u>The Class</u>

The class consists of all persons employed by Defendant as non-exempt employees in the State of California at any time during the time period from March 14, 2015 through November 16, 2020.  (Stipulation, Adolph Decl., Ex. A, at ¶¶ 7, 9.) There are 1,478 Class Members.  (Butler Decl. ¶ 6.)

_____

[1] Plaintiff incorporates by reference the Statement of Facts set forth in Plaintiff's Motion for Attorneys' Fees and Costs and a Class Representative Service Award. (Dkt. 140, at pp. 1-3.)

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

1                    MOTION FOR FINAL APPROVAL

### B.    Settlement Terms

Under the proposed Settlement, the claims of all Participating Class Members shall be settled for the Maximum Settlement Amount of One Million Five Hundred Fifty Thousand Dollars ($1,550,000.00), which shall be inclusive of all Individual Settlement Payments, Attorneys' Fees and Costs, the Class Representative Service Award, Settlement Administration Costs, and the LWDA Payment.  (Stipulation, Adolph Decl., Ex. A, at ¶ 22.)  The Employer's Share of Payroll Taxes shall be paid by Defendant in addition to the Maximum Settlement Amount.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(f).)  No portion of the Maximum Settlement Amount shall revert to Defendant or result in an unpaid residue.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(a).)

The Maximum Settlement Amount shall be allocated as follows:

1.    Individual Settlement Payments.  All Class Members shall be eligible to receive a share of the Net Settlement Amount, which equals the Maximum Settlement Amount, less Attorneys' Fees and Costs, the Class Representative Service Award, Settlement Administration Costs, and the LWDA payment.  (Stipulation, Adolph Decl., Ex. A, at ¶¶ 22, 54(a).)  The Net Settlement Amount shall be distributed to Participating Class Members on a pro rata basis according to the total number of Pay Periods worked during the Class Period.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(a)(i).)[2]

2.    Class Representative Service Award.    Subject to Court approval, Plaintiff shall be paid a Class Representative Service Award not to exceed Ten Thousand Dollars ($10,000.00) for his time, effort and risk in bringing and presenting

_____

[2] Individual Settlement Payment checks will remain negotiable for 180 days from the date of issuance. (Stipulation, Adolph Decl., Ex. A, at ¶ 54(a)(iv).)  If an Individual Settlement Payment check remains uncashed after 180 days from issuance, the Settlement Administrator shall pay over the amount represented by the check to the State Controller's Office Unclaimed Property Fund, with the identity of the Participating Class Member to whom the funds belong. (*Id.*)

MOTION FOR FINAL APPROVAL

the Action and serving as the class representative.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(b).)

3.   <u>Attorneys' Fees and Costs</u>.  Plaintiff's counsel shall seek an award of attorneys' fees in an amount not to exceed Five Hundred Sixteen Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($516,666.67), which equals one-third (1/3) of the Maximum Settlement Amount, and reimbursement of reasonable costs in an amount not to exceed Fifty Five Thousand Dollars ($55,000.00). (Stipulation, Adolph Decl., Ex. A, at ¶ 54(c).)

4.   <u>PAGA Payment</u>. Subject to Court approval, Fifty Thousand Dollars ($50,000.00) from the Maximum Settlement Amount will be allocated as penalties under PAGA, of which 75%, or Thirty-Seven Thousand Five Hundred Dollars ($37,500.00), will be paid to the LWDA.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(d).).   The remaining 25%, or Twelve Thousand Five Hundred Dollars ($12,500.00), shall be distributed to the Aggrieved Employees as part of their Individual Settlement Payments.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(d).)

5.   <u>Settlement Administration Costs</u>.  Subject to Court approval, Settlement Administration Costs not to exceed Fourteen Thousand Dollars ($14,000.00) shall be paid from the Maximum Settlement Amount.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(e).)

**C.   <u>Release</u>**

Upon the Effective Date, Plaintiff and all Participating Class Members shall be deemed to have fully released the Released Parties from any and all claims, wages, penalties, interest, debts, demands, rights, liabilities, costs, compensation, damages, attorneys' fees, actions, and/or causes of action that were pleaded or could have been pleaded based upon the factual allegations set forth by Plaintiff in his original complaint and/or FAC filed in this Action and arising at any time during the Class Period, including any and all claims for and/or related to the causes of action plead for alleged: (1) failure to provide meal periods; (2) failure to authorize and permit

rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to furnish accurate itemized wage statements; (6) failure to maintain required records; (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties; and (8) unfair and unlawful business practices. (Stipulation, Adolph Decl., Ex. A, at ¶ 52.)  In addition, upon the Effective Date, all Aggrieved Employees shall be deemed to have released the Released Parties of any and all claims and/or causes of action under PAGA which are based upon the factual allegations set forth in the operative complaint and arising at any time during the PAGA Period.  (*Id.*)

The "Released Parties" are (i) Defendant; (ii) its past, present and future subsidiaries, parents, affiliated and related companies, divisions, successors, predecessors or assigns; and (iii) its past, present, and future officers, directors, shareholders, partners, agents, insurers, employee, advisors, accountants, representatives, trustees, heirs, executors, administrators, predecessors, successors or assigns of any of the foregoing.  (Stipulation, Adolph Decl., Ex. A, at ¶ 34.)

## III.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23  AND THE REQUIREMENTS OF DUE PROCESS

Before a court may grant final approval of a proposed class action settlement, adequate notice of the settlement must be provided to the class members.  Fed. R. Civ. P. 23(e)(1).  Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice may be by United States mail or other appropriate means.  *Id.*  The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes direct notice to class members who can be identified by regular mail.  *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

The notice plan, as approved by the Court, has been implemented by the Settlement Administrator.    On March 17, 2021, the Settlement Administrator received from Defendant a list containing the Class Members' names, last known addresses, Social Security Numbers and applicable employment information ("Class Information").    (Butler Decl. ¶ 6.)  The Class Information contained information for 1,478 Class Members.    (*Id.*)    The Settlement Administrator updated the Class Information using the National Change of Address search.  (*Id.* at ¶ 7.)  On March 31, 2021, the Notice Packets were mailed to the Class Members via U.S. First Class Mail.  (*Id.* at ¶ 8.)

Forty Notice Packets were returned as undeliverable.    (*Id.* at ¶ 9.)    The Settlement Administrator performed a skip trace on all returned mail with no forwarding address in an effort to locate a better address using Accurint.  (*Id.*)  As a result of the skip trace, 31 Notice Packets were re-mailed to Class Members.  (*Id.*)  Nine Notice Packets remain undeliverable.  (*Id.*)

In sum, the notice procedures undertaken by the Settlement Administrator constitute the best notice practicable under the circumstances, and fully comply with Rule 23 and the requirements of due process.[3]

## IV.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Pursuant to Federal Rules of Civil Procedure, Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e).  In order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(l)(c); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003).  Although the court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement

---

[3] Notice also has been given to the appropriate state and federal officials in accordance with 28 U.S.C. § 1715.  (Roberts Decl. ¶ 3.)

negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 101l, 1027 (9th Cir. 1998)).   In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

## A.    Relevant Criteria Support Final Approval of the Settlement

In deciding whether to grant final approval of a class action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class, (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. Proc. 23(e)(2).  The list of factors is not exhaustive and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* 2018 Comm. Note to Revisions of Fed. R. Civ. Proc. 23(e)(2) (stating that "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").   Applied to this case, the relevant criteria support final approval of the proposed Settlement.

///

MOTION FOR FINAL APPROVAL

### 1.  Plaintiff and Class Counsel Have Adequately Represented the Class

The Ninth Circuit applies a two-pronged test to determine whether the representative parties will adequately represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) have the named plaintiffs and their counsel prosecuted the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000).

As set forth in the Court's order granting preliminary approval, Plaintiff and Class Counsel have fairly and adequately protected the interests of the class.  (Dkt. 126, at p. 6.)  Plaintiff has demonstrated he is capable of representing the Class Members' interests, as he provided testimony during his deposition, responded to Defendant's written discovery requests, aided his attorneys in the prosecution of this matter, attended the full-day mediation and assisted his counsel in realizing a comprehensive and significant settlement for Class Members.  (Holloway Decl. ¶¶ 7-12; Adolph Decl. ¶ 52.)

Additionally, Plaintiff's counsel does not have any conflict of interest with the Class Members.  (Adolph Decl. ¶ 48.)  Plaintiff's counsel also has extensive experience prosecuting wage-and-hour class cases, and has been appointed class counsel in numerous wage-and-hour class actions, including cases before this Court. (*Id*. at ¶¶ 36-47.)

Since the outset of the litigation, Plaintiff and his counsel have vigorously represented the class, engaging in extensive discovery and law and motion practice, including the filing of three motions to compel discovery and a motion for class certification, and opposing Defendant's motion for protective order, motion to deny class certification, and motion for summary judgment.  (*Id*. at ¶ 53.)  Throughout the litigation, Plaintiff has taken an active role as class representative and has supported his counsel's litigation efforts.  (*Id*. at ¶ 52.)  Because Plaintiff and his counsel have adequately represented the class, this factor supports final settlement approval.

### 2.     The Settlement Is The Product Of Informed, Arm's Length Negotiations

The use of an experienced mediator supports a finding that settlement negotiations were both informed and non-collusive. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007); *Deaver v. Compass Bank*, 2015 WL 4999953, *7 (N.D. Cal. Aug. 21, 2015). In addition, evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the settlement is fair. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Here, the Settlement was reached after extensive, arm's length settlement negotiations, with the assistance of an experienced mediator.

Here, the settlement negotiations took place after extensive law and motion practice and discovery efforts, and the Settlement was reached after extensive negotiations with the assistance of an experienced wage and hour mediator. The Parties attended a private mediation with Hon. Louis M. Meisinger (Ret.) on July 13, 2020. (Adolph Decl. ¶ 20.) The Parties did not reach a resolution of the Action at that time, but thereafter continued to engage in settlement discussions with the assistance of Judge Meisinger. (*Id.* at ¶ 21.) Judge Meisinger later made a mediator's proposal, which the Parties accepted on October 2, 2020. (*Id.* at ¶ 22.)

These circumstances are the antithesis of collusion and show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. The Parties went into the mediation willing to explore the potential for a settlement, but were prepared to litigate their positions through trial and appeal if a settlement had not been reached. (*Id.* at ¶ 24.)

Plaintiff and his counsel were able to make an informed decision regarding settlement, as Plaintiff conducted significant discovery and investigation prior to the mediation, including propounding and responding to multiple sets of written

discovery, reviewing over a thousand pages of documents produced by Defendant, interviewing Class Members, defending Plaintiff's deposition, and taking the depositions of Defendant's corporate witnesses. (*Id*. at ¶ 19.) Prior to mediation, Plaintiff also prepared a damages model which was based on information and data obtained from Defendant and Class Members. (*Id*. at ¶ 18.) Based on the information and record developed through extensive investigation and discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the proposed Settlement. (*Id.* at ¶ 19.)

### 3. The Settlement Provides Adequate Relief for the Class

The third factor considers whether the relief provided to the class is adequate, taking into account: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[4]  "An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation mark omitted).  Under the terms of the Settlement, Defendant will pay $1,550,000.00 to resolve the Action.  The settlement amount is over 10% of the *maximum* potential damages, exclusive of non-derivative penalties and interest, allegedly owed to Class Members.  (Adolph Decl. ¶ 29.)[5]  This is a substantial recovery which takes into consideration the significant risks of proceeding with the litigation.

///

---

[4] There are no separate agreements the Court needs to consider to approve the proposed settlement. (Stipulation, Adolph Decl., Ex. A, at ¶ 61.)

[5] A detailed explanation of Plaintiff's valuation is set forth in Paragraph 29 of the Adolph Declaration.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.    Costs, Risks and Delay of Further Litigation

A factor in assessing the adequacy of a settlement is the complexity, expense, and likely duration of the lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. Where, as here, the parties reach a settlement before trial preparation, this factor generally favors settlement. *See Young v. Polo Retail, LLC*, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007).

In reaching a decision to settle this case, Plaintiff's counsel considered the risks of proceeding with the litigation. Defendant has vigorously litigated the case and expressed every intention of continuing their spirited defense through certification and trial. (Adolph Decl. ¶ 24.) Class Counsel has extensive experience in wage and hour class action litigation and knows from experience that any case involving wage and hour claims against a major corporate employer can, and often does, lead to costly litigation that goes on for years. (*Id*. at ¶ 32.) Even assuming the Court granted Plaintiff's motion for class certification, additional risks include: (i) the burdens of proof necessary to establish liability, (ii) the merits of the defenses raised by Defendant, (iii) the difficulties in establishing damages, (iv) the likelihood of success at trial, and (v) the probability of appeal in the event of a favorable judgment. (*Id*. at ¶¶ 30, 32.) Even if Plaintiff certified a class and prevailed through summary judgment and trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members. *See In re Portal Software Secs. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). Accordingly, this factor supports final approval of the settlement.

b.    The Effectiveness of the Proposed Method of Distributing Relief to the Class

Pursuant to the Court's order granting preliminary approval, Class Notice was

sent to the last-known address of all Class Members.  Of the 1,478 Class Notices mailed, only nine remain undeliverable.  (Butler Decl. ¶¶ 8-9.)  In addition, Class Members were not required to submit a claim in order to receive a share of the settlement; rather, all Settlement Class Members who did not opt out will automatically receive a settlement payment. (Stipulation, Adolph Decl., Ex. A, at ¶ 54(a).)  Participating Class Members will have 180 calendar days from the date of issuance of each Settlement Check to cash or deposit the check.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(a)(iv).)  For any checks not cashed or deposited within 180 days, the Settlement Administrator will transfer the amount represented by the check to the California State Controller's Office Unclaimed Property Fund, with the identity of the Participating Class Member to whom the funds belong, to be held for the Participating Class Member.  (*Id*.)  This will allow Participating Class Members who did not cash or deposit their checks within 180 days to collect their respective Settlement Payment at any time in the future.  Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class."  *See Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *4 (E.D. Wash. May 2, 2019).

c.    <u>The Terms of the Proposed Award of Attorneys' Fees</u>

Concurrent with this motion, Class Counsel have moved the Court for an award of attorneys' fees in the amount of Five Hundred Sixteen Thousand Six Hundred and Sixty-Six Dollars and Sixty-Seven Center ($516,666.67).  Plaintiff is entitled to reasonable attorneys' fees under Labor Code §1194 and Code of Civil Procedure § 1021.5.  Class Counsel's requested fees are reasonable as a percentage of the common fund, as they represent one-third (1/3) of the Maximum Settlement Amount.  Class Counsel's requested attorneys' fees are also reasonable based on Class Counsel's lodestar which exceeds the amount of fees requested.  Pursuant to the Settlement Agreement, attorneys' fees will be distributed at the same time as payments to Class Members.  (Stipulation, Adolph Decl., Ex. A, at ¶ 54(c).)

Therefore, this factor also supports final approval of the settlement.

### 4. The Settlement Does Not Provide Preferential Treatment To Plaintiff Or Any Segment Of The Class

Under the fourth factor, the Court examines whether the proposed settlement provides preferential treatment to any class member. "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.,* 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015). Here, the proposed Settlement poses no risk of unequal treatment of any Class Member, as each Participating Class Member's Individual Settlement Payment will be calculated on a pro rata basis, based upon his or her Pay Periods. (Stipulation, Adolph Decl., Ex. A, at ¶ 47(a)(iv).)

The Settlement also provides for a Service Award to Plaintiff in an amount not to exceed $10,000.00, subject to Court approval. (Stipulation, Adolph Decl., Ex. A, at ¶ 54(b).) The Ninth Circuit has recognized that service awards to named plaintiffs in class actions are permissible. *See Staton*, 327 F.3d at 977. As set forth in Plaintiff's Motion for Attorneys' Fees and Costs and a Service Award, the modest payment requested is appropriate based on the substantial risk assumed by and the services undertaken by Plaintiff on behalf of the Class Members. Thus, the absence of any preferential treatment supports final approval.

### 5. Class Members' Reaction to the Settlement

In a proposed settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528- 29 (C.D. Cal. 2004).

This factor also favors final approval. To date, only one Class Member has objected to the Settlement, and twelve Class Members, representing just 0.8% of the

1  class, have requested exclusion. (Butler Decl. ¶¶ 11-12.) Moreover, the sole objector

2  does not challenge the fairness, adequacy, or reasonableness of the Settlement and

3  his concerns are unrelated to the terms of the Settlement. (Objection of Paul

4  Castellano, Butler Decl., Exh. A.)

5          In his objection, Mr. Castellano states that in 2018, he sent a resignation email

6  which stated that he "did not believe that [his] new manager was a good fit for the

7  culture of [the] facility" at which he worked, and a few hours later, Mr. Castellano

8  was escorted to his car by the manager. (*Id*.) Mr. Castellano states that since that

9  time he has applied to several positions at other 3M facilities but has not gotten an

10 interview. (*Id*.) Based thereon, Mr. Castellano states that he believes "[his] voluntary

11 termination was actually a constructive discharge." (*Id*.) Mr. Castellano states that,

12 in addition to the claims in this Action, he "would like to see a pathway for any former

13 3M employee (that was displaced, during the timeframe of this claim) to be reinstated

14 at other comparable positions (if they wish to continue their careers at 3M)" and that

15 "3M should also consider replacing management at the facilities where the

16 appearance of inappropriate activity has been brought to light." (*Id*.) Mr. Castellano

17 "does not intend to be at the Settlement Hearing." (*Id*.)

18         As this Action does not involve claims for wrongful termination or

19 constructive discharge, and the Settlement does not release such claims on behalf of

20 Class Members (Stipulation, Adolph Decl., Ex. A, at ¶ 52), Mr. Castellano's

21 objection is not related to the terms of the Settlement or its fairness, adequacy, or

22 reasonableness. Therefore, Mr. Castellano's objection should be overruled, and the

23 Court should grant final settlement approval.

24         **B.    The Proposed PAGA Allocation Is Fair And Reasonable**

25         The settlement amount allocated for penalties under PAGA is fair and

26 reasonable. As a preliminary matter, courts have discretion to greatly reduce the

27 amount awarded under PAGA. Lab. Code § 2699(2); *Thurgood v. Bayshore Transit*

28 *Management, Inc.*, 203 Cal. App. 4th 1112, 1135 (2012). This is particularly true

where a plaintiff alleges both class claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.*, 2016 WL 5907869, \*9 (N.D. Cal. Oct. 11, 2016). PAGA was initiated to ensure compliance with the Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the parties reach a substantial settlement providing employees with monetary compensation for underlying Labor Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiff proved successful at trial. Additionally, PAGA's shorter statute of limitations justifies a limited allocation when compared to the amount allocated for Labor Code violations.

Here, the $50,000.00 PAGA allocation is well within the range approved by California courts and therefore should be approved. *See Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, \*9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25 percent of gross settlement amount was reasonable, as it "falls within the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, \*1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, \*1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3 percent).

## V.   THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

A party seeking to certify a class must demonstrate that she has met the "four threshold requirements of Federal Rule of Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Indus, Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Once these prerequisites are satisfied, a court must consider whether the proposed class can be maintained under at least

one of the requirements of Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2548 (2011).  Here, the Court provisionally certified the class pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed class satisfies each of these requirements.

### 1.    The Proposed Class Is Sufficiently Numerous

The numerosity requirement is satisfied when "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least 40 members.  *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010) (affirming certification of a class of 20).  A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement.  *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992).  Here, the class consists of 1,468 Participating Class Members.  (Butler Decl. ¶ 13.)  This class is sufficiently numerous to make joinder impracticable.

### 2.    Common Questions Of Law And Fact Predominate

For settlement purposes, the commonality requirement is met.  In this regard, a plaintiff is *not* required to show that there is commonality on *every* factual and legal issue; instead, "for purposes of Rule 23(a)(2) even a single common question will do."  *Wal-Mart Stores*, 131 S. Ct. at 2556 (int. quot. omitted).  Further, courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, to satisfy commonality under Rule 23 as is a common core of salient facts coupled with disparate legal remedies within the class."  *Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, *5 (N.D. Cal. Sept. 5, 2008).  Individualized or deviating facts will not preclude class treatment if most class members were subjected to a policy in a way that gives rise to consistent liability or lack thereof.

*See Arrendondo v. Delano Farms Co.*, 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011).

Importantly, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Amchem Prods.,* 521 U.S. 591, 618-20 (1997). Thus, where the matter is being settled, a showing of manageability at trial is unnecessary. *Id*.

The predominance requirement is satisfied here, as Plaintiff's and the Class Members' claims arise from common practices which Plaintiff contends applied to all Class Members during the Class Period. Indeed, in its tentative ruling regarding class certification, Judge Kronstadt found that Plaintiff's proposed classes met all certification requirements, except for adequacy of representation. (2/20/21 Transcript, Dkt. 119, at 7:1-8:17).

Plaintiff alleges that Defendant failed to pay meal and rest break premiums at the "regular rate of pay" and failed to issue legally-compliant wage statements when Class Members worked overtime and received additional forms of remuneration, including "shift differential" pay, during the same pay period. (Adolph Decl. ¶ 29(c).) Plaintiff also alleges that Defendant failed to provide its employees meal and rest breaks during the Class Period due to its common policies and practices of prohibiting employees from leaving the premises during rest breaks, interrupting employees' meal and rest breaks, and failing to provide second meal breaks on shifts over 10 hours. (*Id*. at ¶ 29(a).) In addition, Plaintiff alleges that Defendant failed to pay daily overtime to employees who worked shifts over eight, but less than ten, hours and, pursuant to its Off-Hours Emergency Work Related Contact policy failed to compensate employees for calls during non-work hours. (*Id*. at ¶ 29(b).)

Given that Defendants' policies and practices give rise to common questions

1  of law and fact, certification for settlement purposes is appropriate.

2  ### 3.      Plaintiffs' Claims Are Typical Of Those Of The Class

3  ### Members

4  The typicality requirement is satisfied where the named plaintiff is a member
5  of the proposed class and his or her claims are "reasonably coextensive with those of
6  the absent class members," though "they need not be substantially identical."  Fed.
7  R. Civ. P. 23(a)(3); *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataprods. Corp.*, 976 F.2d
8  497, 508 (9th Cir. 1992).  Typicality turns on "whether other members have the same
9  or similar injury, whether the action is based on conduct which is not unique to the
10 named plaintiffs, and whether other class members have been injured by the same
11 course of conduct."  *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir.
12 2011) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d at 508).

13 The Court previously tentatively found that the typicality requirement is
14 satisfied based on evidence submitted by Plaintiff that he was subject to the same
15 non-compliant policies and practices as other non-exempt employees.   (2/10/20
16 Transcript, Dkt. 119, at 7:1-8:17.)  Because Plaintiff and the Class Members suffered
17 the same or similar injuries, resulting from the same or similar conduct by Defendant,
18 the typicality requirement is met.

19 ### 4.      Plaintiff and His Counsel Will Adequately Represent the

20 ### Class Members

21 A class representative must be able to "fairly and adequately represent the
22 interests of the class."  Fed. R. Civ. P. 23(a)(4).  For the reasons set forth in Section
23 IV.B.1 above, the adequacy requirement is satisfied.

24 ### 5.      A Class Action Is A Superior Method For Adjudicating this

25 ### Action

26 Rule 23(b)(3)'s superiority requirement is satisfied where "classwide litigation
27 of common issues will reduce litigation costs and promote greater efficiency," or
28 where "no reasonable alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

1227, 1234-35 (9th Cir. 1996). When assessing predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997). In the context of a class action settlement, "manageability is not a concern [because …] by definition, there will be no trial." *In re Hyundai*, 926 F.3d at 556-67.

Courts have recognized that, in wage-and-hour cases, an employer's policies, practices, and procedures often have a similar impact on large numbers of workers such that class-based resolution is efficient and appropriate. *See, e.g., Lerwill v. Inflight Motion Pictures Inc.*, 582 F.2d 507, 512-13 (9th Cir. 1978) (upholding a decision certifying a class of workers seeking overtime pay, and finding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated").

Here, class treatment is superior to other available means for the fair and efficient adjudication of the controversy. The class consists of 1,478 persons, making individual cases impracticable. Furthermore, given the relatively small amounts at issue, it is unlikely that any Class Member acting alone would have pursued these claims against Defendant. *See Leyva v. Medline Industries Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims"). Class treatment will preserve judicial resources, save time, and limit duplication of evidence and effort. Thus, class treatment is superior to other available methods of resolution.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court grant final approval of the Settlement.

1   DATED: May 24, 2021                    **MATERN LAW GROUP, PC**

2

3                                    By:   */s/ Launa Adolph*
                                          MATTHEW J. MATERN
4                                         LAUNA ADOPLH
                                          KAYVON SABOURIAN
5
                                          Attorneys for Plaintiff Jason Holloway
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL